PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. CARMELO CORTÉS, Defendant and Appellant.

No. 2558. Argued July 20, 1925.—Decided December 23, 1925.

1. RAPE—EVIDENCE.—It is not fundamental error to admit in evidence a birth certificate of an outraged girl who in the indictment and certificate is given the name of Carmen although the mother of said girl testified that her name was Carmen María and she was so called in a prior indictment in the same cause.

2. ID.—ID.—IMPEACHMENT OF WITNESS.—When it is not shown on appeal that the defendant was prevented from finishing the examination in impeaching a witness by being interrupted by the judge the error does not warrant a reversal of the judgment.

3. ID.—ID.—RES GESTAE.—Statements made to the mother by a daughter on arriving at her home, after having been out all night with the accused, under circumstances showing that they were made while the nervous excitement of the daughter still controlled her and her faculties were still in suspense, are admissible in evidence.

4. ID.—ID.—CONFESSION—COERCION.—The confession of an accused in a police station, written in the form of an affidavit and signed by him before the prosecuting attorney, wherein it appears that the accused was informed of his legal rights, is admissible in evidence in the absence of any sign of coercion.

5. ID.—ID.—To sustain a conviction in a case of the rape of a girl under the age of fourteen years it is sufficient to show that the defendant had carnal knowledge of the minor. It is not necessary to show that it was done through deceit, force or violence.

District Court of Arecibo, Enrique Lloreda, J. Judgment of conviction for rape. *Affirmed.*

*Luis Mercader* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Carmelo Cortés was indicted by the grand jury for having, on August 25, 1924, in Arecibo, had carnal knowledge of Carmen Guzmán, a minor under fourteen years of age, against her will and overcoming by force the resistance made by the girl. On March 25th he was convicted by the trial jury and on the 28th the district court sentenced him to five years in the penitentiary, whereupon he appealed, assigning in his brief the commission of five errors.

[1] The first assignment refers to the admission in evi-

dence of a certain birth certificate. At the trial Margarita Martínez was called as a witness and testified that she knew Carmen María Guzmán; that she was her daughter by Lorenzo Guzmán, and that she would be fourteen years of age that year. The birth certificate verifies the registration of the birth of a child named Carmen, the legitimate daughter of Lorenzo Guzmán and Margarita Martínez born on October 11, 1910. The defendant's objection was stated by his attorney as follows: ". . . because in it (the certificate) appears the name of Carmen Guzmán Martínez and in the indictment the first time she appears with the name of María, and in a motion made by the prosecuting attorney he says that her name is Carmen, and it is seen that it is not the same person."

In the record reference is made to another trial in this cause, as will be seen later, but nothing appears with respect to what occurred in connection with the name of the outraged girl. Perhaps the first indictment stated that her name was María; perhaps it was amended by reason of what the books of the civil registry revealed; but the only thing that the certified record shows is that she is called Carmen in both the indictment and the certificate. The mother's testimony seems to explain the matter correctly in saying that her daughter's name is Carmen María. The name of María is very commonly added in this Island to another name, both in cases of females and in cases of males. The situation is, then, distinct from that which arose in the case of *People* v. *Torres*, 34 P.R.R. 290. Furthermore, it was held in that case that "in an indictment for murder an amendment of the surname of the deceased is one of substance. It can not be made at the trial, but only by the grand jury." In this case if the indictment was amended it was not done at the trial and it should be presumed that it was done according to law.

[2] The appellant alleges that the court erred in denying him the right to impeach the testimony of the outraged

girl by means of statements made by her in another trial.
When the prosecuting attorney closed his examination the
defense began as follows:

"On examination by attorney Mercader she testified:

"To the question: Do you remember whether in the other trial
held for the first time before this court you testified in that same
chair that you were the defendant's sweetheart and that you went
with him voluntarily, and that you stayed the whole night in the
home of a mistress of the defendant, and that on the next day she
put you out of the house?—She answered: I testified that, but those
were not the words. That his mistress did not put her out of the
house and that she did not sleep in the house.

"To the question: The other time when you were in that chair
and before the jury during the trial held for the first time you said
that you left that dance voluntarily with this man, who was your
suitor, at eleven o'clock at night and that you had spent all night
in the home of a mistress of his; say whether it is true that you
testified that here.—She answered: I did not testify it in that
way.

"That she did not say that that young man was her suitor; nor
that she went with him voluntarily; that she went with him in-
nocently. That she said that it was her pleasure to go with him."

At this stage the judge interrupted and said that the
way to impeach the testimony was by reading to the wit-
ness her former testimony. Then the defense moved that
the stenographer bring the record of the trial. The court
overruled the motion on the ground that it would interrupt
the trial and the defense excepted. In his brief the ap-
pellant does not show that he had not gone as far as he
wanted to go when the judge unnecessarily interfered. Twice
he reminded the witness of her statements in the former
trial and the witness answered explaining them.

When examining its evidence the defense attempted to
introduce the testimony of the stenographer to contradict
the testimony of the offended girl and the court refused
to admit it. In our opinion the court's ruling was errone-
ous, but the defendant does not argue this second situation

in his brief. Therefore, considering what has been said before, that is, that it has not been shown that by the method elected by him the defendant had not secured all that he wanted when the judge interfered, we believe that the error committed does not warrant a reversal of the judgment.

[3] The third assignment refers to the court's having allowed the mother of the offended girl to testify as to what the daughter told her upon arriving at her home on the morning following the night when the crime was committed.

The mother testified that when her daughter arrived in the morning "she looked at her and asked her a question and she began to weep." Then she related to her what had happened. She also said that she saw the clothing stained with blood and "then she immediately informed the prosecuting attorney." When the mother was called the daughter had already testified, saying that she had attended a dance and afterwards spent the rest of the night with the accused.

Under those circumstances the court committed no error in admitting the testimony of the mother. See the case of *People* v. *Calventy, ante,* page 375, which contains a long quotation from Wigmore on Evidence, and also the case of *People* v. *Ruiz,* 18 P.R.R. 587.

[4] The fourth assignment of error treats of the so-called confession of the defendant. Margarita Martínez testified that the accused had made statements "that he gave himself guilty immediately." The defense objected. Nevertheless, the prosecuting attorney continued the interrogatory and the witness replied that at the police station the accused "said that he had been the guilty one; that he had done the wrong." Notwithstanding the long battle between the defense and the prosecuting attorney, the record does not show that the defense took exception.

Ramón Muñoz, Sergeant of Police, was then called to testify. He said that he had heard certain statements of the accused, and in reply to the judge he said:

"That those questions were put by the prosecuting attorney; that at that time the prosecuting attorney was investigating with the girl her affair with the accused, and the accused spontaneously said that he had had carnal contact with her. That the prosecuting attorney called the defendant and asked him whether or not he was willing to testify and he answered that he was willing to testify and then the defendant made that statement. That he does not remember whether that statement was preceded by any other and that he does not remember whether the prosecuting attorney informed the accused of his right to remain silent. That he does not remember whether the prosecuting attorney stated to the accused before testifying that he had the right to remain silent. That he does not remember whether the prosecuting attorney warned the accused that the statement which he was then going to make could prejudice him. That the witness arrived at that time and does not know whether anything else had been said, and that he did not notice whether the statement was made under oath."

The judge said that he would not admit the testimony. The prosecuting attorney again questioned the witness who replied: "That the accused made the statement: 'I want to testify,' and that he heard it from outside." The court again refused to admit the testimony and the prosecuting attorney rested his case.

The defendant began his evidence and the following occurred:

"The prosecuting attorney said that before anything else was done, he was going to ask leave of the court, since he had rested his case, to introduce in evidence the written confession of the accused which he had found and which was with all the requisites.

"The judge granted the permission and attorney Mercader stated that after the prosecuting attorney had waived the rest of his evidence he came once more to ask the court for that special leave.

"The judge asked whether the declaration was signed by the accused and the prosecuting attorney replied in the affirmative, whereupon the judge said that he could introduce it.

"Attorney Mercader stated that he opposed the court's admission of that writing or confession of the accused Carmelo Cortés because the prosecuting attorney had not shown in any way the necessary foundation according to law for the admission of a confession; and that the writing itself did not show that the accused was informed of his right to have the assistance of an attorney, to remain silent or not to testify, or that he was clearly notified that if he should testify his testimony could be used against him; and because it appearing that he was less than nineteen years of age, it was not shown that the accused had sufficient capacity to know the situation in which he was, and because the statement said to be contained in the document is sworn to and this besides involves an embarrassing or distressing situation for the accused, and the fear of suffering a punishment for perjury, which makes it inadmissible according to the jurisprudence on confessions.

"The prosecuting attorney said that it was admissible because it appeared that prosecuting attorney Palmer informed the accused of his right to remain silent.

"The judge stated that the court would admit that statement and that it could be read.

"Attorney Mercader excepted.

"The prosecuting attorney read the statement which is as follows: 'I, Carmelo Cortés, of Arecibo, residing in the ward of La Trocha, 19 years of age, single, day-laborer, before the District Attorney of the Judicial District of Arecibo under oath, after being instructed of the right given by law, that is, whether or not I was willing to testify, and that if I did my testimony could be used against me, say: That the only thing he wants to tell is what he had already stated; that he was in love with María Guzmán and had sexual intercourse with her, but did so with the consent of said María Guzmán and without any violence, for she herself told him that her mother beat her and she wanted to go with him. That that is all he has to say. He ratifies it and signs.—(Signed) Carmelo Cortés.—Signed and sworn to before me this 28th day of August, 1924.—(Signed) S. B. Palmer, District Attorney."

There are, then, three different instances to be considered in deciding whether or not the error assigned was committed. In the first instance the admission of guilt on the part of the accused appears from the testimony of Mar-

garita Martínez. Although the defense objected, no exception was taken and the admission stands. In the second instance the judge was exacting and refused to allow the jury, who had already heard through Margarita Martínez the defendant's statements, to hear them through witness Muñoz. And in the third instance the sworn statement signed by the accused is admitted in evidence.

Those three situations being analyzed, first separately and then together, we believe that it may and should be concluded that the substantial rights of the accused were not violated.

The spontaneous attitude of the accused is understood. His signature appears at the foot of his statement and it therein appears that the legal warnings were given to him. The defendant does not admit in his statement that he did any act of force or violence. He simply acknowledges that he had sexual intercourse with a woman with whom he was in love and who wanted to go with him. He did not consider the age of the woman. Hence the ease with which he spoke. There is no indication of coercion. The document is complete and it speaks for itself.

[5] The fifth and last assignment of error refers to the weighing of the evidence. In our judgment the assignment is without merit. From the evidence it results with absolute clearness that the accused, whether by deceit, or violence, or without overcoming any resistance by force, actually had sexual intercourse with a girl under fourteen years of age. And that of itself is sufficient. Section 255 of the Penal Code. It is of no consequence that the accused was ignorant of the law. Ignorance of the law is no excuse for not complying therewith.

The judgment appealed from should be affirmed.

Mr. Justice Wolf took no part in the decision of this case.